IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE MEYER,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    Civil Action No. 04-166
                                    )    Judge Lancaster/
R. JAMES NICHOLSON,                 )    Magistrate Judge Hay
Secretary of the Department         )
of Veterans' Affairs,[1]            )
                                    )
            Defendant.              )


REPORT AND RECOMMENDATION


I.   RECOMMENDATION

        It is respectfully recommended that the motion for

summary judgment submitted on behalf of defendant (Docket No. 49)

be granted.


II.  REPORT

        Plaintiff, Christine Meyer ("Meyer"), commenced this

action against the Secretary of the Department of Veterans'

Affairs ("Defendant"), bringing claims under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et

seq.*, and Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. 2000e, *et seq.*, alleging that defendant

---

[1]     Although Anthony J. Principi held the Office of Secretary of
        the Department of Veteran's Affairs and was the named
        defendant at the time the complaint was filed, defendant has
        represented, and plaintiff does not dispute, that R. James
        Nicholson has since been sworn in as the Secretary.  Mr.
        Nicholson has therefore been substituted as the named
        defendant in this matter in accordance with Fed. R. Civ. P.
        25(d)(1).

discriminated against her because of her age and retaliated against her after she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

The record demonstrates that plaintiff has been employed as a nurse at the Butler Veterans' Affairs Medical Center ("Butler VA"), located in Butler, Pennsylvania, since 1986.  Plaintiff became a Nurse III in 1998, which is the middle of five pay grades for Registered Nurses, and is the position she still holds today.[2]  In 1999, plaintiff replaced Ruth Chen, who was the Medical Center Education ("MCE") Coordinator and Program Manager of the Education Department.  Plaintiff assumed Chen's role as the Education Coordinator thereby becoming the Team Leader to Diana Toy and Sharon Wehr.  At the same time, the Education Department was merged into the Quality Systems Department and Anne Mikolajczak, the Quality Systems Manager, became plaintiff's supervisor.[3]

In 2002, Ms. Mikolajczak gave plaintiff an annual performance rating of "satisfactory," which was the middle of five overall ratings that a Registered Nurse at the Butler VA can receive.  Although plaintiff testified that a rating of "outstanding" is required in order to be promoted to a Nurse IV, the VA Handbook states that a rating of "satisfactory" meets the

---

[2]   See Def. Exh. 1: Meyer Depo., pp. 14, 57, 58; Def. Exh. 3: Pakutz Decl., ¶ 25; Def. Exh. 5: Brown Decl., ¶ 4.

[3]   See Def. Exh. 1: Meyer Depo., pp. 55-57, 62, 107, 113-14.

Nurse IV qualifications.[4]  Nevertheless, plaintiff filed a charge of discrimination with the EEOC after receiving the satisfactory rating alleging that she was being discriminated against because of her age and gender.[5]

On August 8, 2003, plaintiff and Ms. Mikolajczak met, as they apparently did weekly, to discuss any problems or concerns within MCE.  Plaintiff informed Mikolajczak that a conflict had developed between Diana Toy and Sharon Wehr which was affecting the work environment.[6]  With plaintiff's knowledge, Ms. Mikolajaczak subsequently met individually with Toy and Wehr to discuss the situation and on August 13, 2003, wrote a memorandum to plaintiff outlining Toy's and Wehr's respective positions and setting forth some actions that could be taken to resolve the problems.[7]  Plaintiff, who has testified that she considered the memorandum to be a written reprimand, subsequently filed a charge of discrimination with the EEOC claiming that the August 13, 2003 memorandum was issued in retaliation for her having filed the prior EEO charge.[8]

---

[4]    See Def. Exh. 1: Meyer Depo., pp. 63, 80, 94, 106, 107, 151; Pl. Exh. 1: Meyer Depo., p. 105.

[5]    Copies of plaintiff's EEO filings are attached to the Amended Complaint.  We note that the amended complaint contains no claim of gender discrimination, only a claim under the ADEA and claims of retaliation.

[6]    See Def. Exh. 1: Meyer Depo., pp. 67, 117.

[7]    Id. at pp. 121; Def. Exh. 8: August 12, 2003 Memo.

[8]    See Def. Exh. 1: Meyer Depo,. p. 125.

In March of 2004, the Butler VA underwent another reorganization at which time MCE was moved into Behavioral Health Sciences and Max Viatori became plaintiff's supervisor.  The change also required MCE, including plaintiff, to assume the planning, organizing and coordinating of patient educational activities, to provide staff with instruction and teaching materials to be used with patients and to be knowledgeable about medical center policies, VHA regulations and accreditation organization standards, and to provide education to patients who were newly diagnosed with diabetes.[9]  Although plaintiff testified that she had no reduction in her previous responsibilities, Mr. Viatori has indicated that after the reorganization plaintiff and the MCE staff were no longer required to facilitate and/or lead root cause analyses, monitor and report a series of measures to Workforce Development Council, or responsible for assessing, ensuring and reporting Medical Center staff competencies.[10]  It nevertheless appears that plaintiff as well as Toy and Wehr remained at the same level and were paid the same salary as before the reorganization.[11]  As a result, plaintiff filed another EEO charge alleging that she was

---

[9]     Def. Exh. 9: Viatori Decl., ¶¶ 6-10.

[10]    Id. at ¶ 11; Pl. Exh. 1: Meyer Depo., p. 201.

[11]    See Pl. Exh. 1: Meyer Depo., pp. 182-83; Def. Exh. 9: Viatori Decl., ¶ 15.

assigned the additional duties in reprisal for her prior EEO activity.

It also appears that on September 2, 2004, and again on October 5, 2004, Diana Toy wrote a Report of Conduct ("ROC") memorializing several encounters that she had with plaintiff and describing certain unprofessional behavior allegedly exhibited by plaintiff toward her.[12]  According to plaintiff, these reports were submitted to Ms. Mikolajczak and to Human Resources and would negatively impact any application for a promotion that she might make.  Because defendant did not notify plaintiff that the reports had been filed or give her an opportunity to respond to them, plaintiff filed a fourth EEO charge claiming defendant's actions were in retaliation for filing her previous EEO complaints.

Thereafter, on February 7, 2005, plaintiff's request for a promotion was, in fact, denied by Sandra McCarthy, the Associate Director for Patient Care Services/Nurse Executive for the Butler VA, and on February 25, 2005, plaintiff filed a fifth charge with the EEOC again claiming that she was not promoted in retaliation for her EEO activity.[13]

---

[12]   See Def. Exhs. 12 & 13: ROC's dated September 2, 2004, and October 5, respectively.

[13]   See Def. Exh. 6: McCarthy Decl., ¶ 2; Def. Exh. 10: McCarthy Memorandum dated February 7, 2005.

Plaintiff filed the instant complaint on February 6, 2004, which was then amended on October 27, 2004, April 4, 2005, and again on September 7, 2005.  Plaintiff has brought a claim under the ADEA (Count I), and four claims of retaliation under Title VII revolving around the August 13, 2003 memorandum issued by her supervisor, Anne Mikolajczak, which plaintiff claims was critical of her (Counts II), the expansion of her duties in the spring of 2004 without a corresponding pay or grade increase (Count III), the "filing" of the two ROCs that had been submitted by Diane Toy in September and October of 2004 without giving her an opportunity to respond (Count IV), and failing to promote her in January of 2005 (Count V).

Defendant has now filed a motion for summary judgment arguing that plaintiff is unable to establish a *prima facie* case of discrimination under either the ADEA or Title VII.  Plaintiff has conceded that she is unable to demonstrate that she was discriminated against because of her age and has therefore withdrawn her ADEA claim.  As such, we will address defendant's motion only as it pertains to plaintiff's claims of retaliation.

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  Summary judgment may be granted against a party who fails
to adduce facts sufficient to establish the existence of any
element essential to that party's case, and for which that party
will bear the burden of proof at trial.  Celotex Corp. v.
Catrett, 477 U.S. 317 (1986).  The moving party bears the initial
burden of identifying evidence which demonstrates the absence of
a genuine issue of material fact.  Once that burden has been met,
the non-moving party must set forth "specific facts showing that
there is a *genuine issue for trial* ... or the factual record will
be taken as presented by the moving party and judgment will be
entered as a matter of law.  Matsushita Electric Industrial Corp.
v. Zenith Radio Corp., 475 U.S. 574 (1986).  An issue is genuine
only if the evidence is such that a reasonable jury could return
a verdict for the non-moving party.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986).  Thus, it must be determined "'whether
the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d
1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991),
quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

        Where, as here, the plaintiff seeks to prove her case
through circumstantial evidence, the three-stage shifting burdens
of proof developed for employment discrimination cases in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) are also
applicable.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502
(1993); Texas Department of Community Affairs v. Burdine, 450
U.S. 248, 252-56 (1981); Fuentes v. Perskie, 32 F.3d 759 (3d Cir.
1994).  See Delli Santi v. CNA Insurance Companies, 88 F.3d 192,
199 (3d Cir. 1996)(Applying the shifting-burden analysis to the
plaintiff's retaliation claim).  Under this standard, plaintiff
has the initial burden of demonstrating, by a preponderance of
the evidence, a *prima facie* case of retaliation.  Id.  Once the
plaintiff has established a *prima facie* case, the burden of
production shifts to the defendant to articulate a legitimate,
non-discriminatory reason for the employment decision.  Sempier
v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.), cert. denied,
515 U.S. 1159 (1995).  If the defendant succeeds in articulating
such a reason, the burden then shifts back to the plaintiff "who
must then have an opportunity to prove by a preponderance of the
evidence that the legitimate reasons offered by the defendant
were not its true reasons, but were pretext for discrimination."
Marzano v. Computer Science Corp., 91 F.3d 497, 502-03 (3d Cir.
1996), quoting Texas Department of Community Affairs v. Burdine,
supra at 252-53.  At all times, however, the burden of persuasion
remains with the plaintiff.  Id. at 503.

          In order to establish a *prima facie* case of retaliation
the plaintiff must show that (1) she engaged in a protected

employee activity; (2) the employer took an adverse employment action against her after or contemporaneous with the protected activity; and (3) there was a causal connection between her participation in the protected activity and the employer's adverse action.  <u>Weston v. Pennsylvania Department of Corrections</u>, 251 F.3d 420, 430 (3d Cir. 2001).

Defendant first argues that plaintiff is unable to establish a *prima facie* case of retaliation with respect to either the August 13, 2003 memorandum issued by Anne Mikolajczak or the ROCs submitted by Diane Toy as they do not constitute adverse employment actions.

Until last week, it was the law in the Third Circuit that to establish the second prong of a *prima facie* case of retaliation a plaintiff had to demonstrate that the employment action taken against him or her resulted in "a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing significant change in benefits.'"  <u>Weston v. Pennsylvania</u>, 251 F.3d at 430-31, quoting <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 749 (1998).  Thus, a plaintiff had to demonstrate that the adverse action affected the terms and conditions of his or her employment.  <u>Id.</u>  Last Thursday, however, the United States Supreme Court rejected the notion that the anti-retaliation provision of Title VII was limited to discriminatory actions

affecting the terms and conditions of employment finding that its protections also extended to employment actions that are not employment related or actions taken outside the workplace. Burlington Northern & Sante Fe Railway Co. v. White, ___ U.S. ___, ___ , 2006 WL 1698953 *7, 10 (June 22, 2006) ("Burlington Northern").  Finding that Title VII's retaliation provision should be interpreted broadly, the Court specifically held that a plaintiff must show only that "a reasonable employee would have found the challenged action materially adverse" and that, in the context of a retaliation claim, a materially adverse action means one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at *10 (Internal quotations and citations omitted).  The Court emphasized that the adversity must be material so as to distinguish between harms that are significant and those that are trivial and that the standard is an objective one, i.e., how a reasonable employee would react.  Id.

     Here, in the Court's view, it does not appear that the issuance of either Ms. Mikolajczak's August 13, 2003 memorandum or the ROCs submitted by Diane Toy would have dissuaded a reasonable worker from filing a charge of discrimination and, thus, do not constitute materially adverse actions.  Indeed, contrary to plaintiff's assertion, the August 13, 2003 memorandum does not appear to be "adverse" at all as it contains nothing

that is critical of or negative about plaintiff -- in fact, it does not mention her at all.  Rather, Mikolajczak has simply outlined her findings and suggestions after talking with Toy and Wehr about their apparent conflict.  Moreover, Mikolajczak testified that the memo did not constitute a discipline and was not placed in plaintiff's personnel file and plaintiff herself has acknowledged that she has no evidence that the memorandum was ever placed in her personnel file and that she was never disciplined as a result of the memorandum.[14]  Thus, despite plaintiff's testimony that she considered the memorandum to be a reprimand, in the Court's view, no reasonable employee could have considered it so or felt dissuaded from making a charge of discrimination because of it.  Burlington Northern, ___ U.S. at ___ , 2006 WL 1698953 at *10.

It is equally difficult for the Court to see how the ROCs submitted by a fellow employee could be considered a materially adverse employment action taken against plaintiff by her employer.  Although plaintiff has represented that Ms. Toy's ROCs were submitted to both Ms. Mikolajczak and Human Resources, it appears undisputed that plaintiff was never admonished or disciplined in any way because of the allegations contained in

---

[14]     Def. Exh. 7: Mikolajczak Decl., ¶¶ 5-7; Def. Exh. 1: Meyer Depo., pp. 123, 130.  See Def. Exh. 3: Pakutz Decl., ¶¶ 5-13.

the ROCs.[15]  In fact, plaintiff was apparently unaware that they even existed until Ms. Toy's deposition was taken in this matter. Although plaintiff makes much of the fact that she was not given an opportunity to respond to the ROCs, that fact alone does not demonstrate that their existence impacted negatively on her, particularly in light of her own testimony to the contrary.

Moreover, to the extent that plaintiff has alleged that the ROCs and her inability to defend against the assertions contained therein prevented her from being promoted in February of 2005, Sandra McCarthy, the Nurse Executive at the Butler VA at the time, has attested to the fact that when she recommended not to promote plaintiff she had not seen the ROCs and that they had no bearing on her decision.[16]  As such, there does not appear to be any evidence of record from which it could be concluded that plaintiff suffered any repercussions as a result of the ROCs or that they qualify as a materially adverse action.  Cf. Weston v. Pennsylvania Department of Corrections, 251 F.3d at 431 (Finding that two written reprimands that were placed in the plaintiff's personnel file for six months did not constitute adverse employment actions where the plaintiff was unable to establish how they effected a material change in the terms and conditions of her employment.)  It therefore follows that plaintiff is

---

[15]    See Def. Exh. 1: Meyer Depo., p. 126; Def. Exh. 3: Pakutz Decl., ¶¶ 5-13; Def. Exh. 7: Mikolajczak Decl., ¶¶ 8,9.

[16]    Def. Exh. 6: McCarthy Decl., ¶¶ 18-21.

unable to establish a *prima facie* case of retaliation with respect to these documents and defendant is therefore entitled to summary judgment on Counts II and IV of the Amended Complaint.[17]

With respect to plaintiff's retaliation claim brought at Count III of the complaint, defendant appears to conceded that plaintiff engaged in protected activity prior to May of 2004 and that she arguably suffered a materially adverse employment action when her duties were allegedly expanded without an increase of pay or grade.  Defendant submits, however, that plaintiff is unable to establish the third prong of the *prima facie* case or a causal link between the filing of an EEO action and her increased duties.

It appears undisputed that close temporal proximity between the protected activity and an adverse employment decision may be sufficient to establish a causal link.  <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir.), <u>cert.</u> <u>denied</u>, 522 U.S. 914 (1997).  In the absence of temporal proximity, however, a causal connection may nevertheless be established where there is evidence that "the employer engaged in a pattern of antagonism in the intervening period."  <u>Id</u>. at 920-21, citing <u>Robinson v.</u>

---

[17]   We note here that because the parties filed their briefs in this matter before <u>Burlington Northern</u>, <u>supra</u>, was decided they have obviously not had the opportunity to discuss its impact on this case.  Given our findings here, however, and the fact that <u>Burlington Northern</u> has announced a significantly broader standard under which an adverse employment action will be found, it appears that further briefing is unnecessary.

SEPTA, 982 F.2d 892, 894 (3d Cir. 1993).  See Kachmar v. SunGard

Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Plaintiff appears to concede that the increase in her

duties did not occur in close temporal proximity with any EEOC

activity,[18] but argues that she is nevertheless able to establish

a causal connection as defendant engaged in a pattern of activity

in the intervening period.  Plaintiff cites to the fact that

since she first engaged in protected activity she has not

received a merit based salary increase despite having engaged in

activities that could warrant such increases, such as publishing

an article, committee work, receiving outstanding proficiencies

for 2003 and 2004, and performing additional patient education

duties.[19]

The specific evidence upon which plaintiff relies

however, does not appear to support her position that defendant

engaged in a pattern of antagonism between the time she filed her

---

[18]    Plaintiff nevertheless notes that "the additional duties in
patient education were added approximately five months after
Plaintiff filed the September 2003 EEO complaint."
Plaintiff's Brief in Opposition to Defendant's Motion for
Summary Judgment, p. 9.  Plaintiff has alleged in the
Amended Complaint, however, that her duties were increased
on May 27, 2004, which was approximately eight months after
she filed the September 2003 EEO complaint.  See Amended
Complaint ¶ 45.   Thus, to the extent that plaintiff has
suggested that these events occurred in close temporal
proximity, the record is to the contrary. See Banner v.
Albert Einstein Medical Center, 1995 WL 262537 *2 (E.D. Pa.
April 27, 1995), affirmed, 70 F.3d 1254 (3d Cir. 1995)
(Finding no causal connection where the events in question
occurred five months apart).

[19]    Plaintiff's Response to Defendant's Concise Statement of
Material Facts and Plaintiff's Material Facts, ¶ 83.

EEO actions and when her duties were increased.  Indeed, many of the events to which plaintiff points occurred after her duties were allegedly increased and, thus, could not be demonstrative of a pattern of activity which culminated in the retaliatory action.

For instance, plaintiff points to her deposition testimony in which she states that she received the highest proficiency rating in December of 2004 but was denied a promotion to Nurse IV in 2005, and that she requested but was denied a pay raise after she was assigned the additional duties in May of 2004.  Having already been retaliated against by being given additional duties before either of these events took place, it does not appear that they provide the basis for finding that defendant engaged in a pattern of antagonism between the filing of the EEO action and her being assigned more duties in May of 2004.

As well, plaintiff cites to the fact that Ms. Mikolajczak removed her from the Clinical Leadership Committee without notice and without being assigned to another committee. Plaintiff, however, has alleged she was not removed from the committee until "late 2004," which was well after she was allegedly given additional responsibilities in retaliation for engaging in EEO activity in May of 2004.[20]  Thus, being removed

---

[20]   Plaintiff's Response to Defendant's Concise Statement of Material Facts and Plaintiff's Material Facts, ¶ 79; Amended Complaint, ¶ 45.

from the committee does not establish a pattern of antagonism between the filing of the EEO action and plaintiff being assigned more responsibilities.

The only other evidence to which plaintiff cites to demonstrate a pattern of antagonism leading up to her increase in duties is her deposition testimony in which, after a discussion about the length of service step increases she has received, she states, "Well, when you have an achievement beyond and above what your normal duties would be, there's opportunity for advancement, and those have not occurred."[21]  Simply restating the allegation, however, is not the equivalent of pointing to evidence from which a factfinder could conclude that it is true, nor does her testimony here establish a pattern of antagonism.  Indeed, the only extra achievement that plaintiff actually identifies is that she published an article in a journal.[22]  She does not state when the article was published, however, or whether it is the type of achievement that has typically been rewarded in the past. Moreover, the fact that she published one article that went unrewarded does not establish a pattern even if it occurred between filing an EEO charge and the increase in her responsibilities.  It therefore appears that plaintiff is unable to establish a causal connection between the alleged increase of

---

[21]     Pl. Exh. 2: Meyer's 6/6/05 Depo., pp. 8-10.

[22]     Id. at p.. 24-25.

her duties in May of 2004 and any EEO activity and, thus, is unable to demonstrate a *prima facie* case of retaliation. Defendant is therefore entitled to summary judgment on plaintiff's claim for retaliation brought at Count III of the Amended Complaint as well.

Finally, plaintiff has brought a claim for retaliation at Count V of the Amended Complaint alleging that defendant retaliated against her by failing to promote her to a Nurse IV in February of 2005. In its motion, defendant initially argues that plaintiff is unable to establish a causal connection between the filing of an EEO charge and the decision not to promote her since the official who made the determination not to recommend plaintiff for the promotion was unaware that she had engaged in EEO activity. To support its position, defendant has submitted a declaration from Sandra McCarthy who has stated therein that in the memorandum dated February 7, 2005, she did not recommend that plaintiff receive a promotion to a Nurse IV grade and that "to the best of [her] knowledge" she was "not named as a responsible management official with regard to any of the previous EEO complaints of Ms. Meyer."[23] In the Court's view, however, the fact that Ms. McCarthy had no knowledge of being named as a responsible management official in any of plaintiff's prior EEO complaints is not the equivalent of not having any knowledge that

---

[23]     See Def. Exh. 6: McCarthy Decl., ¶¶ 6, 16.

17

plaintiff had, in fact, filed previous EEO complaints.  Thus, it appears that defendant has failed to identify evidence which demonstrates the absence of a genuine issue of material fact regarding a causal connection between plaintiff's EEO activity and her being denied a promotion.

Moreover, it appears undisputed that plaintiff filed two EEO charges after Ms. McCarthy was hired at the Butler VA and prior to her recommending that plaintiff not be promoted in February of 2005 -- on August 13, 2004, and on January 29, 2005. The latter, of course, was less than one week before Ms. McCarthy declined to recommend plaintiff for a promotion and appears to be close enough in temporal proximity to permit the inference that the two events were causally linked.  See Woodson v. Scott Paper Co., 109 F.3d at 920.  It therefore appears that plaintiff is able to establish a _prima facie_ case of retaliation at Count V and, as such, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for failing to promote plaintiff.  Texas Department of Community Affairs v. Burdine, 450 U.S. at 252-56.

Defendant submits that in making the recommendation not to promote plaintiff to a Nurse IV, Ms. McCarthy used the VA Handbook to determine whether or not plaintiff was eligible for advancement having referenced the content of VA Handbook 5005, Part III, Chapter 4, Section 6, which covers promotion and

18

advancement to a higher level within the grade of registered nurses and nurse anesthetists, in her February 5, 2005 memorandum.[24]  Specifically, section 6(c)(1), sets forth the criteria warranting promotion to a Nurse IV and indicates that the assignments which typically warrant advancement are located in settings where there is a high rate of activity, which McCarthy notes are typically "at medical centers for which the Nurse Executive Complexity Level has been assigned a Level 1 or 2," while the Butler VA has been rated as a lower level "Complexity Level (III)" facility.[25]  Further, Ms. McCarthy states that she reviewed plaintiff's current assignment in comparison with the applicable VA Nurse Qualification Standards for promotion to a Nurse Level IV and found that plaintiff's assignment lacked the scope and complexity necessary for advancement to a Nurse Level IV with regard to administrative assignments, educational assignments, research assignments, and program assignments.[26]

With respect to administrative assignments, Ms. McCarthy submits that plaintiff was not responsible for managing

---

[24]   See Def. Exh. 6: McCarthy Decl., ¶ 7; Def. Exh. 4: VA Handbook 5005/13, Part III, Chapter 4, § 6; Def. Exh. 10: McCarthy's February 7, 2005 Memorandum.

[25]   Def. Exh. 6: McCarthy Decl., ¶¶ 8, 9.  See Def. Exh. 11: VA Handbook 5007, Appendix H, "Nurse Executive Special Pay Facility Tier Designation."

[26]   Def. Exh. 6: McCarthy Decl., ¶¶ 10, 11, 12, 13; Def, Exh. 10: McCarthy February 7, 2005 Memorandum.

and supervising the nursing program; planning, organizing,
directing, controlling, and evaluating programs and follow-up
actions required by internal and external review organizations
and/or accrediting bodies; giving daily attention to complex
personnel management problems; participating in executive and
decision-making deliberations; or performing a full range of
administrative duties as detailed in VA Handbook 5005, Part III,
Chapter 4, Section c(2)(a).[27]  Regarding educational assignments,
Ms. McCarthy has indicated that plaintiff does not have
individual responsibility for developing broad educational and
training programs involving a variety of nurse specialities as
outlined in VA Handbook 5005, Part III, Chapter 4, Section
c(2)(b),[28] and that, with respect to research assignments,
plaintiff's current assignment lacks the requisite scope and
complexity in that she does not have individual responsibility
for conducting merit-reviewed, approved research projects
relative to nursing care and related speciality areas, for
performing independent research or serving as a primary
contributing member of a research team, for formulating the
research proposal and protocol submission to Center Office for
merit review, or for publishing in appropriate nursing journals

---

[27]     Def. Exh. 6: McCarthy Decl., ¶ 10; Def. Exh. 4: VA Handbook
         5005/13, pp. III-46, III-47.

[28]     Def. Exh. 6: McCarthy Decl., ¶ 11; Def. Exh. 4: VA Handbook
         5005/13, p. III-47.

as detailed in VA Handbook 5005, Part III, Chapter 4, Section c(2)(c).[29]

Finally, with regard to program assignment, Ms. McCarthy submits that plaintiff does not possess full program responsibility for nursing program design; for integrating the program with other related programs and organizational goals; for monitoring, evaluating and administering the program; and, does not have significant human resource responsibilities or a full range of other administrative duties.[30]  Moreover, Ms. McCarthy has noted that plaintiff does not hold one of the positions listed in VA Handbook 5005, Part III, Chapter 4, as usually warranting a grade of Nurse IV or higher.[31]

Thus, it appears that defendant has offered a legitimate nondiscriminatory reason for its employment decision and the burden now shifts back to plaintiff to demonstrate that these reasons were pretext for retaliation.  To meet this burden plaintiff must produce "some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not

---

[29]    Def. Exh. 6: McCarthy Decl., ¶ 12; Def. Exh. 4: VA Handbook 5005/13, p. III-47.

[30]    Def. Exh. 6: McCarthy Decl., ¶ 13.

[31]    Def. Exh. 6: McCarthy Decl., ¶ 14; Def. Exh. 4: VA Handbook 5005/13, p. III-46.

a motivating or determinative cause of the employer's actions."

Fuentes v. Perskie, 32 F.3d at 764.

> [T]he plaintiff cannot simply show that the
> employer's decision was wrong or mistaken,
> since the factual dispute at issue is whether
> discriminatory animus motivated the employer,
> not whether the employer is wise, shrewd,
> prudent, or competent. . . . Rather, the non-
> moving plaintiff must demonstrate such
> weaknesses, implausibilities,
> inconsistencies, incoherencies, or
> contradictions in the employer's proffered
> legitimate reasons for its action that a
> reasonable fact finder could find them
> "unworthy of credence," . . . and hence infer
> "that the employer did not act for [the
> asserted] non-discriminatory reasons."

Id. at 765 (citations omitted).

Here, plaintiff does not dispute the reasons McCarthy has given for declining to recommend plaintiff's promotion -- indeed, she has not addressed them at all. Rather, plaintiff seeks to show pretext by pointing to two statements allegedly made by McCarthy sometime prior to making her recommendation in which she indicated that she believed plaintiff was qualified for a Nurse IV position. Specifically, plaintiff points to her own deposition testimony in which she states that McCarthy had told her that she met the qualifications for a Nurse IV and that she (McCarthy) did not see any reason why plaintiff should not be promoted.[32] As well, Max Viatori, a Counseling Psychologist and

---

[32]   Pl. Exh. 2: Meyer Depo., p. 21.

plaintiff's supervisor between March and September of 2004, testified that McCarthy had told him that she was very optimistic about plaintiff's promotion but that it had to be decided outside the Butler VA.[33]

In the Court's view, neither of these statements provides the basis for finding that defendant's reasons for not promoting plaintiff are unworthy of credence or that a retaliatory motive was likely a determinative factor.  Not only is it unclear when McCarthy made the statements, in what context they were made or what her employment relationship with plaintiff was at the time, but they do not speak to whether plaintiff, in fact, met the qualifications for a Nurse IV as set forth in the Handbook and which Ms. McCarthy purports to have relied upon in making her recommendation.  Under these circumstances, the fact that McCarthy at some point expressed optimism about a promotion for plaintiff does not appear to render her subsequent findings that the complexity of plaintiff's assignments did not, in fact, meet the requisite qualifications, implausible or unworthy of credence.  Indeed, McCarthy has represented that she has not recommended anyone for a promotion to a Nurse IV since she has been employed at the Butler VA.[34]

---

[33]     Pl. Exh. 4: Viatori Depo., pp. 17-18.

[34]     Def. Exh. 6: McCarthy Decl., ¶¶ 2-4, 15.

Nor does the fact that Ruth Chen was a Nurse IV and previously held the position of MCE coordinator serve to establish that McCarthy's reasons for failing to promote plaintiff to a Nurse IV are pretext for discrimination.  Not only did Ms. Chen leave the Butler VA in 1999,[35] which was four years before Ms. McCarthy was hired,[36] but it is not clear when Ms. Chen became a Nurse IV, under what circumstances she became a Nurse IV, what Ms. Chen's qualifications or responsibilities were at the time she became a Nurse IV or even whether the same qualifications applied to a Nurse IV position at the time. Moreover, it is unclear to whom, if anyone, Ms. Chen reported or how the departments were structured when she became a Nurse IV. Indeed, it appears undisputed that several reorganizations took place both before and after Ms. Chen left and that after her departure, the position of MCE Coordinator, which plaintiff assumed from Chen, was realigned under the Program Line of Quality Systems and the Education Department was merged into the Quality Systems Department.[37]  Thus, the mere fact that Chen may have been a Nurse IV when she was the MCE Coordinator would not, without more, permit a reasonable factfinder to conclude that McCarthy's findings that plaintiff did not meet the

---

[35]    Pl. Exh. 1: Meyer Depo., p. 55.

[36]    Def. Exh. 6: McCarthy Decl., ¶¶ 2-4.

[37]    See Defendant's Concise Statement of Material Facts &
        Plaintiff's Response thereto, ¶¶ 14-18.

qualifications of a Nurse IV in February of 2005 unworthy of credence.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of defendant (Docket No. 49) be granted.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:   26 June, 2006

cc:  Hon. Gary L. Lancaster
     United States District Judge

     Neal A. Sanders, Esquire
     Dirk D. Beuth, Esquire
     Law Office of Neal Alan Sanders
     1924 North Main Street Extension
     Butler, PA 16001

     Paul E. Skirtich
     Assistant United States Attorney
     Office of United States Attorney
     Suite 400, U.S. Post Office & Courthouse
     700 Grant Street
     Pittsburgh, PA 15219